| CASE NO. | SUMMONS NO. |
|---|---|
| CV21946377 | D1 CM    44163433 |

Rule 4 (B) Ohio
Rules of Civil Procedure

EDWARD SMITH **PLAINTIFF**
VS
CLEVELAND CLINIC FOUNDATION, ET AL **DEFENDANT**

# SUMMONS

CLEVELAND CLINIC FOUNDATION
9500 EUCLID AVENUE
CLEVELAND OH 44195

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

**Plantiff's Attorney**

FRED M BEAN
25200 CHAGRIN BLVD

SUITE 200
BEACHWOOD, OH 44122-0000

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

SHANNON M GALLAGHER
Do not contact judge. Judge's name is given for attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

By 
Deputy

| DATE SENT |
|---|
| Apr 14, 2021 |

COMPLAINT FILED   04/14/2021



CMSN130

SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. | SUMMONS NO. |
|---|---|
| CV21946377 | D1 CM  44163434 |

Rule 4 (B) Ohio
Rules of Civil Procedure

EDWARD SMITH                    **PLAINTIFF**
          VS
CLEVELAND CLINIC FOUNDATION, ET AL   **DEFENDANT**

# SUMMONS

```
CLEVELAND CLINIC FOUNDATION
C/O ST CORPORATION SYSTEM
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS OH 43219-0000
```

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plantiff's Attorney**

```
FRED M BEAN
25200 CHAGRIN BLVD

SUITE 200
BEACHWOOD, OH 44122-0000
```

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

SHANNON M GALLAGHER
Do not contact judge. Judge's name is given for attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT | |
|---|---|
| Apr 14, 2021 | By   _____ |
|  | Deputy |

COMPLAINT FILED    04/14/2021

||||||||||||||||||||||

| CASE NO. | SUMMONS NO. | | |
|---|---|---|---|
| CV21946377 | D2 CM | 44163435 | Rule 4 (B) Ohio |

Rules of Civil Procedure

# SUMMONS

|  |  |
|---|---|
| EDWARD SMITH | **PLAINTIFF** |
| VS |  |
| CLEVELAND CLINIC FOUNDATION, ET AL | **DEFENDANT** |

DAVID EASTHON
444 NORTH STREET
CHARDON OH 44024

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plantiff's Attorney

FRED M BEAN
25200 CHAGRIN BLVD

SUITE 200
BEACHWOOD, OH 44122-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

SHANNON M GALLAGHER
Do not contact judge. Judge's name is given for attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT | By _____ |
|---|---|
| Apr 14, 2021 | Deputy |

COMPLAINT FILED   04/14/2021



CMSN130

| CASE NO. | SUMMONS NO. |
|---|---|
| CV21946377 | D2 CM   44163436 |

Rule 4 (B) Ohio
Rules of Civil Procedure

EDWARD SMITH                    **PLAINTIFF**
VS
CLEVELAND CLINIC FOUNDATION, ET AL   **DEFENDANT**

# SUMMONS

DAVID EASTHON
CLEVELAND CLINIC FOUNDATION
9500 EUCLID AVENUE
CLEVELAND OH 44195-0000

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plantiff's Attorney

FRED M BEAN
25200 CHAGRIN BLVD

SUITE 200
BEACHWOOD, OH 44122-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

SHANNON M GALLAGHER
Do not contact judge. Judge's name is given for attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



By _____
              Deputy

| DATE SENT |
|---|
| Apr 14, 2021 |

COMPLAINT FILED    04/14/2021



CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**April 14, 2021 09:04**

By: FRED M. BEAN 0086756

Confirmation Nbr. 2227777

EDWARD SMITH

CV 21 946377

vs.

**Judge:** SHANNON M. GALLAGHER

CLEVELAND CLINIC FOUNDATION, ET AL

**Pages Filed:** 14

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| EDWARD SMITH<br>6651 Rochelle Boulevard<br>Parma Heights, Ohio 44130 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| THE CLEVELAND CLINIC FOUNDATION<br>9500 Euclid Avenue<br>Cleveland, Ohio 44195 | )<br>)<br>)<br>) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT** |
| **Serve also:**<br>The Cleveland Clinic Foundation<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219 | )<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| -and- | ) | |
| DAVID EASTHON<br>444 North Street<br>Chardon, Ohio 44024 | )<br>)<br>) | |
| **Serve also:**<br>The Cleveland Clinic Foundation<br>9500 Euclid Avenue<br>Cleveland, Ohio 44195 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Edward Smith, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Edward Smith is a resident of the city of Parma Heights, county of Cuyahoga, state of Ohio.

2. The Cleveland Clinic Foundation ("Cleveland Clinic") is a corporation for non-profit with its principal place of business located at 8911 Euclid Avenue, Cleveland, Ohio 44195.

Electronically Filed 04/14/2021 09:04 / / CV 21 946377 / Confirmation Nbr. 2227777 / CLDLJ

The Employee's Attorney.™ 

3. Upon information and belief, Easthon is a resident of the state of Ohio.

4. Easthon was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor at the Cleveland Clinic who acted directly or indirectly in the interest of the Cleveland Clinic.

5. Easthon was, at all times hereinafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

6. Easthon made and/or participated in the adverse actions asserted herein.

7. All of the material events alleged in this Complaint occurred in Cuyahoga County.

8. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

9. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

10. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

11. Smith is a former employee of the Cleveland Clinic Police Department ("CCPD").

12. Smith is African American.

13. Smith was hired by CCPD on or around July 28, 1997.

14. The CCPD is a department of the Cleveland Clinic.

15. Smith was hired by CCPD as a patrol officer.

16. On August 8, 2003, Smith was promoted to Police Sergeant.

17. Throughout the course of Smith's employment, Smith received positive reviews related to his performance.



18. Throughout the course of Smith's employment, Smith received periodic pay raises related to his positive performance.

19. David Easthon was the Chief of Police at CCPD.

20. Easthon is Caucasian.

21. Upon information and belief, Easthon became Chief of Police at CCPD in 2005.

22. Easthon did not participate in the decision to hire Smith.

23. Throughout his time at CCPD, Easthon preferred Caucasian employees as compared to African American employees.

24. Throughout his time at CCPD, Easthon treated African American employees less favorably as compared with Caucasian employees.

25. While Smith was employed with CCPD, Easthon would ignore the African American employees.

26. While Smith was employed with CCPD, Easthon would walk by the African American employees without speaking to them.

27. While Smith was employed with CCPD, Easthon would only speak to the African American employees when he was reprimanding them.

28. While Smith was employed with CCPD, Easthon would only speak to the African American employees when he was giving them orders.

29. While Smith was employed with CCPD, Easthon was not friendly with the African American employees.

30. While Smith was employed with CCPD, Easthon was very pleasant with the Caucasian employees.



31. When Smith was employed with CCPD, Easthon would commonly greet the Caucasian employees with smiles.

32. When Smith was employed with CCPD, Easthon would commonly greet the Caucasian employees with hugs.

33. In or around 2014, Smith filed a complaint with the EEOC alleging race discrimination.

34. After the EEOC investigation took place, the CCPD forced Easthon to take a sensitivity class.

35. After the EEOC investigation took place, the CCPD instructed Easthon to be more cognizant of the way he treated African American employees.

36. After the EEOC investigation took place, the CCPD instructed Easthon to be more cognizant of the way he spoke to African American employees.

37. After Easthon took the sensitivity class, his behavior did not change towards the African American employees.

38. After Easthon took the sensitivity class, his behavior did not change towards Smith.

39. After Easthon took the sensitivity class, he continued to make racist comments publicly.

40. After Easthon took the sensitivity class, he continued to make racist comments publicly without repercussion.

41. In or around 2017, Easthon told all of his subordinate officers that they were located in a "ghetto" area. ("The Ghetto Comment.")

42. After iterating The Ghetto Comment, it was clear that the word "ghetto" was referring to African Americans.

43. The Ghetto Comment offended the African American employees at CCPD.

44. The Ghetto Comment offended Smith.

45. The Ghetto Comment was racist.

Electronically Filed 04/14/2021 09:04 / / CV 21 946377 / Confirmation Nbr. 2227777 / CLDLJ
The Employee's Attorney.™


46. In or around 2017, Easthon instructed his subordinate officers to stop as many "ghetto looking cars" as possible. ("The Ghetto Looking Cars Comment.")

47. After iterating The Ghetto Looking Cars Comment, it was clear that the phrase "ghetto looking cars" was referring to African Americans.

48. The Ghetto Looking Cars Comment offended the African American employees at CCPD.

49. The Ghetto Looking Cars Comment offended Smith.

50. The Ghetto Looking Cars Comment was racist.

51. In or around 2017, Easthon instructed his subordinate officers to stop "ghetto looking cars" because it was likely that "those people" had warrants. ("The Those People Comment.")

52. After iterating The Those People Comment, it was clear that the phrase was referring to African Americans.

53. The Those People Comment offended the African American employees at CCPD.

54. The Those People Comment offended Smith.

55. The Those People Comment was racist.

56. In or around May of 2018, Easthon openly referred to the medical benefits for lower income individuals as "the Black man free medical giveaway." ("The Racist Medical Benefits Comment.")

57. The Racist Medical Benefits Comment offended the African American employees at CCPD.

58. The Racist Medical Benefits Comment offended Smith

59. The Racist Medical Benefits Comment was racist.

60. Implying that all lower income individuals are Black is offensive.

61. Implying that all lower incomes individuals are Black is racist.

62. Despite Easthon's open offensive views, CCPD did not reprimand Easthon for his behavior.

Electronically Filed 04/14/2021 09:04 / / CV 21 946377 / Confirmation Nbr. 2227777 / CLDLJ

The Employee's Attorney.™



63. Despite Easthon's open discriminatory views, CCPD did not reprimand Easthon for his behavior.

64. Despite Easthon's open racist views, CCPD did not reprimand Easthon for his behavior.

65. In or around April of 2019, Smith drove Easthon to the airport.

66. While Smith was driving Easthon to the airport, Smith overheard a conversation between Easthon and Rocco Polutro.

67. Polutro was an old friend and former Chief of Police for Cleveland.

68. While Smith was driving Easthon to the airport, Smith overheard Polutro say to Easthon, "David, we used to have good times. Remember how we used to do them *niggers*?" ("The Racist Airport Comment.")

69. The Racist Airport Comment implied that Easthon was involved in negative treatment of African Americans.

70. When The Racist Airport Comment was iterated, Easthon quickly hung up the phone on Polutro.

71. When The Racist Airport Comment was iterated, Smith drew attention to the fact that Polutro said "*we*."

72. When The Racist Airport Comment was iterated, "*we*" implied Easthon was included in the negative treatment of African Americans.

73. When The Racist Airport Comment was iterated, Easthon stated, "I do not know what he is talking about."

74. After The Racist Airport Comment was iterated, Smith reported The Racist Airport Comment to CCPD.



75. After The Racist Airport Comment was iterated, Smith reported The Racist Airport Comment to David Wright.

76. At the time of the report, Wright was a commander at CCPD.

77. Two weeks after Smith reported The Racist Airport Comment, Wright left CCPD.

78. After Wright left CCPD, nothing was ever done about Smith's report.

79. On or around April 30, 2019, Smith began FMLA leave for his scheduled surgery.

80. On or around April 30, 2019 Smith began his approved FMLA leave of absence.

81. While Smith was out on FMLA leave, Easthon replaced Smith with a Caucasian employee.

82. While Smith was out on FMLA leave, Easthon replaced Smith with Shannon Darby.

83. Darby was known for not being friendly with African Americans.

84. Darby is Caucasian.

85. As soon as Darby took over for Smith, Darby accused Smith of fixing Officer Victoria Going's time.

86. Going is Caucasian.

87. Even though Going is Caucasian, she is treated less favorably as compared with other Caucasian employees.

88. Even though Going is Caucasian, she is treated less favorably due to her romantic relationship with an African American.

89. After CCPD's investigation of the allegations that Smith fixed Going's time, the allegations were found to be inaccurate.

90. Before learning of the results of the investigation, Easthon barged into Smith's hospital room after his surgery.

Electronically Filed 04/14/2021 09:04 / / CV 21 946377 / Confirmation Nbr. 2227777 / CLDLJ
The Employee's Attorney.™



91. Before learning of the result of the investigation, Easthon barged into Smith's hospital room to reprimand him.

92. On or around June 14, 2019, Smith returned to work at CCPD from his FMLA leave.

93. When Smith returned from FMLA leave, Smith began to be left out of important meetings.

94. When Smith returned from FMLA leave, Easthon began to treat Darby as a superior to Smith.

95. When Smith returned from FMLA leave, Easthon began to give direct orders to Darby instead of Smith.

96. When Smith returned from FMLA leave, Smith overheard Darby say to another coworker, "I did what David asked me to, so he better give me that sergeant position." ("Darby's Sergeant Comment.")

97. Darby's Sergeant Comment implied that there was an open sergeant position within CCPD.

98. At the time of Darby's Sergeant Comment, there was not an open sergeant position.

99. Darby's Sergeant Comment included the implication that she was told about an open sergeant position.

100. Upon information and belief, Easthon was planning on terminating Smith's employment.

101. Upon information and belief, Easthon was planning on giving Darby the sergeant position that belonged to Smith.

102. Upon information and belief, Easthon was planning on giving a Caucasian employee Smith's sergeant position.

103. In or around June of 2019, Lieutenant Payne decided to retire.

104. Lieutenant Payne was Smith's direct supervisor.

105. Lieutenant Payne is African American.

Electronically Filed 04/14/2021 09:04 / / CV 21 946377 / Confirmation Nbr. 2227777 / CLDLJ

The Employee's Attorney.™



8

106. Throughout Smith's employment at CCPD, Lieutenant Payne was the one coworker who usually stood up for him against Easthon's accusations.

107. In or around the end of July 2019, Lieutenant Payne was replaced by Daniel Thompson.

108. Daniel Thompson is Caucasian.

109. On or around September 18, 2019, Thompson terminated Smith's employment.

110. On or around September 18, 2019, Thompson terminated Smith's employment for allegedly being mean to Darby.

111. On or around September 18, 2019, Thompson terminated Smith's employment for allegedly using profane language directed at Darby.

112. Smith denies Thompson's allegations of being mean to Darby.

113. Smith denies Thompson's allegations of using profane language directed at Darby.

114. After Smith's employment was terminated, Smith was replaced by Ryan Ball.

115. Ball is Caucasian.

116. CCPD has a progressive disciplinary policy.

117. Upon information and belief, CCPD's disciplinary policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

118. Smith did not receive a verbal warning.

119. Smith did not receive a written warning.

120. By terminating Smith, CCPD violated its own progressive discipline policy.

121. Upon information and belief, CCPD permitted similarly-situated Caucasian employees to retain their employment despite having situations that were similar to or worse than Smith's.

122. Officer Brian Pierce is Caucasian.



123. While Pierce was employed with CCPD, Pierce inappropriately cropped a photo of a female officer eating a donut.

124. While Pierce was employed with CCPD, Pierce photoshopped a picture of his penis into the photo where the donut was.

125. While Pierce was employed with CCPD, Pierce photoshopped a picture of his penis into the photo to make it look like the female officer was putting his penis into her mouth.

126. Pierce's employment was not terminated.

127. Upon information and belief, Pierce continues to work for CCPD today.

128. Pierce's conduct was significantly worse than Smith's alleged conduct.

129. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Smith.

130. As a result of being constantly harassed and insulted on the basis of his race during his employment at CCPD, and being wrongfully terminated from CCPD, Smith has suffered severe emotional distress, anxiety, and depression.

131. The above facts demonstrate that Defendants engaged in a pattern and practice of race discrimination.

132. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

133. There was a causal connection between Smith's race and Defendants' termination of Smith.

134. There was a causal connection between Smith's taking of FMLA leave and Defendants' termination of Smith.

## COUNT I: RACE DISCRIMINATION

135. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. Throughout his employment, Smith was fully competent to perform his essential job duties.



137. Easthon treated Smith differently than other similarly-situated employees based on his race.

138. Easthon violated R.C. § 4112.02(A) *et seq.* by discriminating against Smith due to his race.

139. On or about September 18, 2019, CCPD terminated Smith without just cause.

140. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

141. Defendants terminated Smith based on his race.

142. Defendants violated R.C. § 4112.01 et. seq. when they terminated Smith based on his race.

143. Smith suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

144. As a direct and proximate result of Defendants' conduct, Smith has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: RETALIATORY DISCRIMINATION

145. Smith restates each and every prior paragraph of this complaint, as if it were fully restated herein.

146. As a result of the Defendant's discriminatory conduct described above, Smith complained about the race discrimination she was experiencing.

147. Defendant's actions were retaliatory in nature based on Smith 's opposition to the unlawful discriminatory conduct.

148. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

149. Smith suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*



150. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Smith, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF THE FMLA

151. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. During his employment, Smith utilized FMLA leave.

153. After Smith utilized his qualified FMLA leave, Defendants retaliated against him.

154. Defendants retaliated against Smith by terminating his employment.

155. Defendants willfully retaliated against Smith in violation of U.S.C. § 2615(a).

156. As a direct and proximate result of Defendants' wrongful conduct, Smith is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Smith demands from Defendants the following:

(a) Issue an order requiring defendants to restore Smith to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Smith for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;



(d) An award of reasonable attorney's fees and non-taxable costs for Smith's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

          Respectfully submitted,

          */s/ Fred Bean*
          Fred Bean (0086756)
          Taurean J. Shattuck (0097364)
          **THE SPITZ LAW FIRM, LLC**
          25200 Chagrin Boulevard, Suite 200
          Beachwood, OH 44122
          Phone: (216) 291-4744
          Fax: (216) 291-5744
          Email: fred.bean@spitzlawfirm.com
                 taurean.shattuck@spitzlawfirm.com

          *Attorneys For Plaintiff Edward Smith*



## JURY DEMAND

Plaintiff Edward Smith demands a trial by jury by the maximum number of jurors permitted.

/s/ Fred Bean
Fred Bean (0086756)
Taurean J. Shattuck (0097364)

